# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF KANSAS

## KANSAS CITY DIVISION

| | | |
|---|---|---|
| In The Matter Of: | ) | |
| | ) | Case Number 18-21725-rdb |
| DANNA FAY TAYLOR | ) | |
| | ) | |
| Debtor, | ) | Chapter 13 |
| | ) | |
| | ) | |
| DANNA FAY TAYLOR | ) | Adversary Proceeding Case Number: 23-06024-rdb |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMUNITY LOAN SERVICING, LLC, ET AL. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT COMMUNITY LOAN SERVICING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S PURPORTED MOTION FOR CONTEMPT AND SANCTIONS WITHIN THE AMENDED COMPLAINT

1

Defendant Community Loan Servicing, LLC (hereinafter "CLS" or "Defendant"), submits this memorandum of law in support of its motion for an Order: (1) pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") Rule 12(b)(1) ("Rule 12(b)(1)") made applicable by Bankruptcy Rule 7012(b), dismissing Plaintiff, Danna Fay Taylor's ("Debtor" or "Plaintiff") Amended Complaint ("FAC") with prejudice for lack of subject matter jurisdiction; (2) pursuant to Rule 12(b)(6) ("Rule 12(b)(6)"), dismissing Plaintiff's FAC with prejudice for failure to state a claim; (3) denying Plaintiff's motion for contempt and sanctions against CLS; and (4) granting such other and further relief as this Court may deem just and proper (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff commenced this action alleging CLS violated Section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), Section 524 of the Bankruptcy Code, Sections 1024.35 and 1024.36 of Regulation X and Section 2605 of the Real Estate Settlement Procedures Act ("RESPA") stemming from CLS's purported mishandling of Plaintiff's Loan (defined below) payments, reporting of her account to the credit reporting agencies ("CRAs") and failure to respond to Plaintiff's requests for information, CLS filed a motion to dismiss, and Plaintiff filed the FAC. Plaintiff's FAC must be dismissed in its entirety, as it still suffers from the same fatal defects as the initial Complaint.

First, the Court should dismiss the FAC under Rule 12(b)(1) because it lacks jurisdiction over this action. Specifically, even if taken as true, Plaintiff's allegations amount to technical violations that are insufficient to establish Article III standing. Although Plaintiff attempts to allege she suffered a concrete injury, her allegations fail to articulate a concrete injury in fact. Moreover, Plaintiff's post-petition FCRA and RESPA claims are not causes of action created under the Bankruptcy Code and, therefore, do ***not*** arise under Title 11. Nor are these claims related to a case under Title 11. On this basis alone, the Court should dismiss the FAC against CLS.

2

Second, to the extent the Court determines that it has jurisdiction over Plaintiff's claims, such claims should be dismissed under Rule 12(b)(6) because: (1) Plaintiff is judicially estopped from asserting her claims under the Bankruptcy Code and, even if she is not judicially estopped, there is no private right of action under Sections 105 and 524 of the Bankruptcy Code, nor has she stated a claim under the same; (2) Plaintiff fails to state a FCRA claim, as the reporting of the Loan was accurate and not misleading; and (3) there is no private right of action under Regulation X, and Plaintiff fails to state a RESPA claim, as she fails to plead actual and/or statutory damages.

Finally, the Court should deny the portion of Plaintiff's FAC that seeks contempt and sanctions against CLS pursuant to Sections 105 and 524 of the Bankruptcy Code because it is procedurally improper and premature. Accordingly, the Court must dismiss the FAC in its entirety with prejudice.

## STATEMENT OF FACTS

This summary reflects the facts as alleged in the FAC, as such allegations are assumed to be true within the context of Rule 12 and solely for the purpose of resolving this motion.[1]

On October 16, 2006, Plaintiff obtained a loan in the principal amount of $45,785.72 ("Loan"), securing real property located at 1347 Cleveland Avenue, Kansas City, Kansas 66104 ("Property"). FAC, ¶¶ 53-56.

On August 21, 2018, Plaintiff filed a Voluntary Petition seeking Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the District of Kansas ("Bankruptcy Case"). *Id*. at ¶ 57; *see also* Declaration of James Eric Todd, Ex. A ("Todd Decl."). On the same date, Plaintiff filed her Chapter 13 Plan ("Plan"). FAC, ¶ 58; Todd Decl., Ex. B. CLS filed its Proof of Claim on or about October 30, 2018. FAC, ¶ 59; Todd Decl., Ex. D.

---

[1] CLS does not admit or deny these allegations and reserves the right to challenge the veracity of all allegations in the FAC.

3

On or about October 19, 2018, the Bankruptcy Court entered an Order Confirming Chapter 13 Plan ("Confirmation Order"). FAC, ¶ 61; Todd Decl., Ex. C. Plaintiff made her Loan payments to CLS outside of the Plan. FAC, ¶ 62.

Plaintiff alleges that while she was making Loan payments to CLS, CLS mishandled her payments causing Plaintiff "to appear as if she was behind on her mortgage payments when she was not" and "caused her to fall further behind than she should have been." *Id.* at ¶¶ 73-74. As a result, Plaintiff alleges she "begrudgingly" agreed to a modification of the Loan in June 2020 ("First Modification Agreement"). *Id.* at ¶ 85.

Plaintiff admittedly missed a few payments under the Modification Agreement and, as such, CLS moved for relief from the automatic stay. *Id.* at ¶ 90. Plaintiff thereafter entered in a second modification agreement with CLS in June 2021 ("Second Modification Agreement").[2]

On or about June 9, 2022, the Bankruptcy Court entered an Order of Discharge ("Discharge Order"). *Id.* at ¶ 95. CLS then transferred the Loan. *Id.* at ¶ 98.

Plaintiff alleges that on or about October 3, 2022, she disputed CLS's reporting of the Loan to Equifax. *Id.* at ¶ 142.[3] Specifically, Plaintiff alleges that CLS's reporting on the Loan was inaccurate, incorrect and/or materially misleading because it made it appear as if the Loan was discharged when it was not, as follows "INCLUDED_IN_CHAPTER_13", the Comments section reporting 'Bankruptcy chapter 13' and 'Bankruptcy petition', and the Date of First Delinquency and Delinquency First Reported field both stated 'Aug 01, 2018.'" *Id.* at ¶¶ 133; 153.

Plaintiff further alleges that on or about February 8, 2023, she submitted a Qualified Written Request and/or Request for Information, as well as a Notice of Error to CLS ("RFI 1").

---

[2] *Id.* at ¶ 91.
[3] While Plaintiff alleges the dispute was made in October 2022, the credit report which is the subject of this action is dated December 2022 – two months *after* Plaintiff's purported dispute. FAC, Ex. H.

4

*Id*. at ¶ 215.  Plaintiff alleges CLS failed to acknowledge receipt of RFI 1, failed to send a response to RFI 1 with the information requested by Plaintiff and did not correct any errors or conduct any investigation into the errors.  *Id*. at ¶¶ 220-24.  As such, Plaintiff submitted a Qualified Written Request and/or a Request for Information, as well as a Notice of Error to CLS on or about June 1, 2023 ("RFI 2").  *Id*. at ¶ 225.  Similar to her RFI 1 claims, Plaintiff alleges CLS failed to acknowledge receipt of RFI 2, failed to send a response to RFI 2 with the information requested by Plaintiff and did not correct any errors or conduct any investigation into the errors.[4]

On September 15, 2023, Plaintiff commenced this action by filing the Complaint alleging violations of the FCRA, RESPA and Section 524 of the Bankruptcy Code stemming from CLS's purported misapplication and miscrediting of Plaintiff's payments under the Loan.  On November 20, 2023, CLS brought a motion to dismiss the Complaint.  On December 11, 2023, Plaintiff filed the FAC and simultaneously filed an Objection to CLS's Motion to Dismiss arguing the Motion to Dismiss is moot.  CLS now brings this Motion.

## QUESTIONS PRESENTED

1.      Whether Plaintiff lacks Article III standing to commence this action.

2.      Whether Plaintiff's FCRA and RESPA claims are core matters that arise out of or are "related to" matters under Title 11 of the Bankruptcy Code such that the Court has jurisdiction over these claims.

3.      Whether Plaintiff's FAC states a cause of action under Section 524 of the Bankruptcy Code, the FCRA and RESPA.

4.      Whether Plaintiff's purported "motion" within the FAC is procedurally improper and premature.

---

[4] *Id*. at ¶¶ 230-34.

5

## ARGUMENT

**I.      THE COURT SHOULD DISMISS THE ACTION WITH PREJUDICE UNDER RULE 12(B)(1) BECAUSE IT LACKS SUBJECT MATTER JURISDICTION**

### A.      Standard for Dismissal Under Rule 12(b)(1)

Federal Courts are courts of limited jurisdiction and may only exercise jurisdiction when authorized to do so.  *See Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994); *Castaneda v. I.N.S.*, 23 F.3d 1576 (10th Cir. 1994). When a court lacks subject matter jurisdiction or a plaintiff lacks standing to hear and be heard, Rule 12(b)(1) permits a party to move to dismiss a claim asserted against it.  *See* Rule 12(b)(1).

A motion filed under Rule 12(b)(1) can take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  A facial attack requires the court to accept as true the allegations contained in the complaint.  *Id.* at 1002.  Where a factual attack on the Complaint based upon lack of Article III standing serves as the basis of the Rule 12(b)(1) motion, the Court "may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1002.  In considering a factual attack of subject matter jurisdiction, the Court may look beyond the four corners of the Complaint and has wide discretion to allow evidence outside of the pleadings.  *Id.* ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdiction facts under Rule 12(b)(1).").

The plaintiff bears the burden of proof that subject matter jurisdiction does exist.  *See Blume v. Los Angeles Superior Courts*, 731 F. App'x 829 (10th Cir. 2018) (citation omitted); *Coffman v. CHS Gas & Oil,* 2018 WL 3616948, at *3 ("The plaintiff must shoulder the burden to establish the court's subject matter jurisdiction.") (internal citation omitted).

### B.      The Court Must Dismiss the FAC Since Plaintiff Lacks Article III Standing

Plaintiff's claims must be dismissed because she lacks Article III standing; the FAC fails

140406.01366/134111501v.3

to remedy this fatal defect.

To have standing, a plaintiff must establish: "(1) an injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is redressable by a favorable decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff at the pleading stage, as the party invoking federal jurisdiction, bears the burden of establishing these elements by alleging facts that plausibly demonstrate each element. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Lujan*, *supra*, 504 U.S. at 560-61; *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) ("each of these components is independently necessary to establish injury in fact – it is not enough, for example, that an alleged injury is individualized, or particular, to the plaintiff – that injury must also be concrete, or 'real rather than abstract'"). "Standing is not dispensed in gross; rather, plaintiff[] must demonstrate standing for each claim that they press and for each form or relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("*Ramirez*").

Further, to establish an "injury in fact," a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, *supra*, 578 U.S. at 339. The Supreme Court clarified the *Spokeo* standard in *Ramirez*, where it held that "an injury in law is not an injury in fact," and a lawsuit based only on the violation of a statute "may not proceed because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." 141 S. Ct. at 2205. As such, a plaintiff must show some "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts," i.e., some actual real-world harm, to confer Article III standing. *Id*. at 2206. If the harm is intangible, it must have a "close relationship to a

7

harm traditionally recognized as providing a basis for a lawsuit." *Id.* at 2204 (internal citations omitted). "Only those plaintiffs who have been *concretely* harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 2205. Regardless of whether a plaintiff proves a statutory violation, "[n]o concrete harm, no standing."[5]

Here, Plaintiff's FAC fails to allege sufficient facts to satisfy Article III standing. First, Plaintiff's allegations that CLS violated (1) the FCRA by purportedly inaccurately reporting Plaintiff's Loan to Equifax (FAC ¶¶ 101-56); (2) Section 524 of the Bankruptcy Code by purportedly misapplying and miscrediting payments made by Plaintiff (FAC, ¶¶ 157-75); (3) Bankruptcy Rule 3002.1 by purportedly collecting fees against Plaintiff's Loan throughout the duration of the Bankruptcy Case that were not properly noticed or in excess of amounts allowed (FAC, ¶¶ 176-98); and (4) the FDCPA by purportedly failing to send a response to RFI 1 and RFI 2 (FAC, ¶¶ 199-247) are nothing but technical statutory violations, which are insufficient to confer Article III standing as a matter of law. *See Thole v. U.S. Bank, N.A.,* 140 S. Ct. 1615, 1620 (2020) (a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.") (internal citation omitted); *see also Spokeo, supra*, 568 U.S. at 342 (no standing based on "bare procedural violation" of FCRA); *Davis v. Professional Parking Mgmt. Corp.*, 2023 WL 4542690, at *3 (11th Cir. July 14, 2023) (affirming District Court Order granting defendant's motion to dismiss holding plaintiff's claims under the FDCPA were "purely statutory, without any allegations of justifiable reliance, actual damages, or other concrete injury").[6]

---

[5] *Id*. at 2200.
[6] *See also Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) ("a 'bare statutory violation' is not enough, no matter how beneficial we may think the statute to be."); *Mikulsky v. Noom, Inc.*, 2023 WL 4567096, at *6 (S.D. Cal. July 17, 2023) ("Plaintiff's conclusory allegation is insufficient to establish that she suffered a concrete harm").

8

Second, Plaintiff's weak attempt to allege a harm beyond a bare statutory violation fails because her allegations are insufficient to assert a concrete injury. For example, with respect to Plaintiff's FCRA claim, Plaintiff alleges she suffered damages, including "*fear of* credit denials, reduced credit scores, damage to Plaintiff's creditworthiness, emotional distress, frustration, missed personal and professional time in order to tend to this matter and inconvenience." FAC, ¶ 273 (emphasis added). Further, Plaintiff claims "Defendants' acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit scores and other credit rating model scores" (*Id* at 277)[7] and the "material *risk* of being denied credit or receiving less favorable credit terms than they otherwise would." *Id*. at 278 (emphasis added); *see also* ¶ 279 ("the existence of consumer reports which inaccurately, incompletely, and/or materially misleading report the Mortgage, and/or falsely suggest that the Mortgage has been discharged or is subject to discharge, make it inherently more difficult for Plaintiff to refinance her Mortgage *in the future*") (emphasis added). In addition, with respect to Plaintiff's purported Section 524 claim, she alleges CLS's conduct caused her pecuniary loss, stress, worry, nightmares and loss of sleep, focus and hope (FAC, ¶¶ 288-95), as well as medical issues, which purportedly caused Plaintiff to incur out of pocket expenses (*id.* at ¶¶ 304-07). However, Plaintiff's "material risk," fear, concern and worry are neither real nor immediate, but rather in anticipation of speculative future events, which does **not** constitute an actual or imminent injury in fact. *See Ramirez*, *supra*, 141 S. Ct. at 2210; *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) (fear of a future harm is not an injury in fact unless the future harm is "certainly impending" and "[a]llegations of possible future injury" are not sufficient"); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022) ("Remember: A plaintiff always must be able to point to a concrete injury to bring suit . . .

---

[7] *See also*, FAC, ¶ 253 ("Defendant's departures from the credit industry's own reporting standards have caused Plaintiff to suffer from reduced FICO credit scores").

9

[a]nd if a risk hasn't materialized, the plaintiff hasn't yet been harmed."); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41-46 (3d Cir. 2011) ("allegations of hypothetical, future injury do not establish standing under Article III"); *C.C. v. Med-Data Inc.*, 2022 WL 970862, at *7-8 (D. Kan. Mar. 31, 2022) (finding plaintiff's allegations of imminent, immediate and continuing risk of identity theft, identity fraud and/or medical fraud were not sufficiently imminent or substantial to confer standing. Nor are Plaintiff's general allegations of emotional damages (FAC, ¶¶ 170, 181-90; 198, 274-75; 307) sufficient to confer Article III standing. *See Sims v. Kahrs Law Offices, P.A.*, 2023 WL 2734317, at *7 (D. Kan. Mar. 31, 2023) (holding plaintiff's allegations that she suffered emotional distress, aggravation, inconvenience, embarrassment and frustration were in sufficient to establish a concrete injury).[8]

Plaintiff also alleges, with respect to her RESPA claim, that "she incurred costs relative to sending the RFIs – such as postage and attorneys' fees" (FAC, ¶ 316), and CLS's purported failure to respond to the RFIs caused her to believe that "CLS was not accountable to, and could not be held accountable to, its legal obligations." (*Id*. at 317). However, expending time and money in determining the proper course of action does ***not*** constitute concrete injury to confer Article III standing. *See Clapper*, *supra*, 568 at 416 (a plaintiff "cannot manufacture standing merely by

---

[8] *See also Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (a "general allegation of emotional harm like anxiety or distress falls short of cognizable injury as a matter of general tort law, because liability for emotional harm arises only where [the emotional distress is] extreme."); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 2021 WL 3877930, at *3 (7th Cir. 2021) (holding anxiety and embarrassment are not injuries in fact and expressly rejecting "stress" as constituting concrete injury); *Ward v. Trans Union LLC*, 2023 WL 4330849, at *6 & *9 (D. Colo. May 12, 2023) (holding "a lowered FICO score is not enough to support a claim for economic damages based on a furnisher's FCRA violation" and Plaintiff's "allegations regarding emotional harm are not sufficient to establish standing"); *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934 (7th Cir. 2022) ("psychological states, such as emotional distress, worry, and confusion, are not concrete injuries"); *Simpson v. Revco Sols., Inc.*, 2022 WL 17582742, at *3 (S.D. Ill. Dec. 12, 2022) (finding that the plaintiff's allegations of "undue stress, anxiety, confusion, annoyance, and emotional distress do not amount to a concrete injury to satisfy Article III standing."); *Wilkinson v. Olympia Dev. of Mich. LLC*, 2022 WL 4870781, at *3 (E.D. Mich. Oct. 3, 2022) (finding that "bare allegations of stress, fear, anger, and frustration do not amount to a concrete injury."); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021) (finding that a "perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing").

10

inflicting harm on [herself]… .").[9]  Further, alleged confusion and misunderstanding do not confer

Article III standing.  *See Shields v. Professional Bureau of Collections of Maryland, Inc.*, 55 F.4th

823, 830 (10th Cir. 2022) (*citing Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934 (7th Cir.

2022)); *Simpson v. Revco Sols., Inc.*, *supra*, 2022 WL 17582742.

Third, Plaintiff's purported intangible harms are similarly insufficient for Article III

standing.  While Plaintiff's FAC alleges CLS's purported FCRA violations "caused a defamation-

type harm upon Plaintiff" (FAC, ¶ 284), Plaintiff still fails to explain how the purported harm

suffered is closely associated with the referenced tort.  *See generally*, FAC.  Nor does Plaintiff

allege any facts regarding any purported "defamatory statement 'that would subject [her] to hatred,

contempt, or ridicule' [was] published to a third party,"[10] *i.e.*, one of Plaintiff's creditors.  Thus,

these bald allegations of intangible harm fail to allege a concrete injury as a matter of law.  *See*

*TransUnion*, *supra*, 141 S. Ct. at 2210 (a concrete injury requires actual "downstream

consequences" or "adverse effects"); *Trichel v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998

(11th Cir. 2020) (holding that "by jettisoning the bedrock elements of [the common law tort of

fraudulent or negligent misrepresentation], the plaintiffs assert claims with no relationship to

harms traditionally remediable in American or English courts.  This cuts against Article III

standing… .").[11]

---

[9] *McCombs v. Delta Group Electronics, Inc.*, 2023 WL 393466, at *6 (D. N.M. June 9, 2023) (plaintiff's "efforts monitoring her accounts and safeguarding her PII are not a defense against concrete or imminent threat" and therefore, plaintiff's manufactured harm does not give rise to standing); *Steinmetz v. Financial Recovery Services, Inc.*, 2022 WL 2441239, at *3-4 (E.D.N.Y. July 5, 2022) (dismissing the action for lack of subject matter jurisdiction, where plaintiff alleged that he was "concerned and confused by the Letter", was "unable to make a payment on the debt", "expended time and money in determining the proper course of action" and suffered "emotional harm"); *Wolkenfeld v. Portfolio Recovery Assocs., LLC,* 2022 WL 1124828, at *2 (E.D.N.Y. Apr. 14, 2022) ("Plaintiff alleges that he 'was concerned and confused by the [l]etter,' 'was unable to evaluate his options of how to handle this debt,' and 'expended time and money in determining the proper course of action', those allegations in themselves also do not constitute concrete injury."); *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) (holding plaintiff's "alleged time and money expenditures . . . do not establish standing").

[10] *Ramirez*, *supra*, 141 S. Ct. at 2197 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)).

[11] *See also Nojovits v. Ceteris Portfolio Servs., LLC,* 2022 WL 2047179, at *3 (E.D.N.Y. June 7, 2022) (holding that "Plaintiff's bald assertion that Plaintiff's harms 'have a close relationship to . . . the torts of fraud, negligent

11

Finally, like the initial Complaint, Plaintiff's FAC still asserts nebulous, abstract claims without any factual support, as required by *Ramirez*. For example, Plaintiff does not allege how her credit rating was impaired, or provide any factual support for her claim that she was unable to obtain credit. *See generally,* FAC. Without alleging facts to support these claims, Plaintiff cannot show she suffered *any* injury, much less a *concrete* injury, and therefore, she fails to meet her burden of establishing Article III standing. *See Ramirez, supra,* 141 S. Ct; *see also Attridge v. Colonial Savings F.A.*, 2023 WL 6444895, at *4 (W.D. Tex. Sept. 28, 2023) (holding plaintiff did not establish she suffered a concrete harm under Article III, where the Complaint "Has neither alleged nor shown any instances of credit denial, a decreased credit score, or lost credit opportunities as a result of [Defendant's] alleged failure to conduct a reasonable investigation"); *Gross v. TransUnion LLC*, 607 F. Supp.3d 269, 273 (E.D.N.Y. 2022) ("The only allegations that could support standing in the complaint are that plaintiff suffered an 'injury to his credit worthiness,' 'increased difficulty obtaining credit,' and 'embarrassment, humiliations, and other emotional injuries.' . . . Without more, these conclusory allegations are insufficient.").

Because Plaintiff's FAC consists of only technical procedural violations of the FCRA,

---

misrepresentation, negligent infliction of emotional distress and conversion,' does not make it so. . . . These purported analogues have been asserted and rejected in numerous nearly identical FDCPA cases. ***Plaintiff has not attempted to explain how the particular allegations in this case plausibly allege all of the elements of any of those torts, let alone do so adequately enough to convince the Court that she has standing, and thus Plaintiff has not carried her burden of demonstrating standing.***") (emphasis added); *Kola v. Forster & Garbus LLP*, 2021 WL 4135153, at *6 (S.D.N.Y. Sept. 10, 2021) ("*TransUnion* and cases decided since demonstrate that, where a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing."); *Schultz v. Midland Credit Mgmt., Inc.*, 2022 WL 3013082, at *4 (D. N.J. July 29, 2022) (explaining that to establish standing post-*TransUnion*, plaintiffs must show evidence that bears a close relationship to the elements of the common-law analogue) *Ward v. Nat'l Patient Acct. Servs., Inc.*, 2021 WL 3616067, at *3 (6th Cir. Aug. 16, 2021) (holding plaintiff lacked standing where key elements of the analogous common-law claim were lacking); *Facchini v. Resurgent Capital Services, L.P.*, 2023 WL 4236032 (D. Ct. June 28, 2023) (holding plaintiff failed to establish standing where plaintiff has not alleged facts – as distinct from legal conclusions – to plausibly show any of the elements of the common law injury of negligent misrepresentation); *Pruitt v. Resurgent Capital Services, LP*, 610 F.Supp.3d 775 (D. Md. 2022) (holding plaintiff lacked standing where the Court could not "determine from the Complaint's conclusory allegations whether [plaintiff's] injury is sufficiently similar to fraud or negligent misrepresentation"); *Shields v. Professional Bureau of Collections of Maryland, Inc.*, 55 F.4th 823 (10th Cir. 2022).

12

Bankruptcy Code and RESPA, and Plaintiff's perfunctory allegations of harm are conclusory, Plaintiff lacks Article III standing. Accordingly, Plaintiff's FAC must be dismissed with prejudice.

### C. Counts I and III Alleging Violations of the FCRA and RESPA Must Be Dismissed Because the Court Lacks Jurisdiction Over These Non-Core and/or Non-"Related to" Claims

Plaintiff alleges "[t]his is a core proceeding, as that term is defined by 28 U.S.C. § 157(b)(2), in that it concerns claims and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code." FAC, ¶ 7. Specifically, Plaintiff attempts to remedy the jurisdictional defects of her initial Complaint by alleging this Court can "hear this matter as it involves questions of law considered essential to the nature of the bankruptcy process and Plaintiff's bankruptcy case" and that "while some of Plaintiff's claims are based in statutory and other law arising outside of title 11, the factual predicates of these claims are all centered in the Bankruptcy Code and the misconduct of Defendants in relation to the Bankruptcy Code."[12] Despite Plaintiff's allegations to the contrary, Plaintiff's FCRA and RESPA claims are **not** core or "related to" claims, so the Court lacks jurisdiction over these claims.

Pursuant to 28 U.S.C. § 1334, federal district courts have original and exclusive jurisdiction over cases under Title 11 of the United States Code and over all property of a bankruptcy estate. 28 U.S.C. § 1334(a) & I(1). Such courts also have original but not exclusive jurisdiction over "civil proceedings arising under[T]itle 11, or arising in or related to cases under [T]itle 11."[13]

Pursuant to 28 U.S.C. § 157(b)(1), bankruptcy courts may hear and determine all cases under the Bankruptcy Code or arising in a case under the Bankruptcy Code, otherwise known as "core" proceedings. 28 U.S.C. § 157(b)(1). "Core proceedings are proceedings that involve rights created by bankruptcy law or which only arise in a bankruptcy proceeding." *In re Telluride Income*

---

[12] *Id.* at ¶¶ 33 & 35.
[13] *Id.* at § 1334(b).

13

*Growth, L.P.*, 364 B.R. 390, 397 (10th Cir. BAP 2007) (internal citation omitted). Simply put, core proceedings do ***not*** exist outside of the bankruptcy, and the bankruptcy court's jurisdiction over them is undebatable. *In re Houlik*, 481 B.R. 661, 673 (10th Cir. BAP 2012).[14]

Non-core matters are "those that are 'not … core' but are 'otherwise related to a case under [T]itle 11.'" *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014). Non-core matters do not depend on the Bankruptcy Code for their existence and can proceed in another court outside of bankruptcy. *See Gardner v. U.S. (In re Gardner)*, 913 F.2d 1515, 1517-18 (10th Cir. 1990) (internal citation omitted). A bankruptcy court has jurisdiction over non-core proceedings when they are "related to" the bankruptcy case because they could conceivably have an effect on the bankruptcy estate. *Id.* at 1518. While there is no statutory definition for determining if a matter falls within a bankruptcy court's "related to" subject matter jurisdiction, related proceedings "include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *In re Midgard Corp.*, 204 B.R. 764, 771 (10th Cir. BAP 1997) (internal citation omitted).[15]

Importantly, courts in multiple jurisdictions have held that post-petition and post-discharge claims are beyond the scope of the Bankruptcy Court's limited jurisdiction over "related to" non-core matters. *See In re Frambes*, 454 B.R. 437 (E.D. Ky. 2011) (holding Bankruptcy Court could not exercise jurisdiction over post-discharge claims under the FDCPA and state consumer protection law because the claims did not arise under the Bankruptcy Code, could exist outside the bankruptcy and had no conceivable effect on any estate being administered in bankruptcy); *In re Vienneau*, 410 B.R. 329 (D. Mass. 2009); *In re King*, 2010 WL 3851434 (D. Colo. Bankr. Sept.

---

[14] A non-exclusive list of "core proceedings" is set for in 28 U.S.C. § 157(b)(2).
[15] *Gardner, supra*, 913 F.2d at 1518 (a proceeding is "related to" a bankruptcy case if it could have been commenced in federal or state court independently of the bankruptcy case, but the "outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy") (internal citation omitted).

14

24, 2010) (holding plaintiff's FDCPA and state law claims are based on post-petition actions taken by defendants, are not property of the debtor's estate and therefore the claims are not encompassed in the Court's limited subject matter jurisdiction under 28 U.S.C. § 1334 and must be dismissed); *In re Atwood*, 452 B.R. 249 (D.N.M. 2011) (dismissing plaintiff's FDCPA and state law claims because they "relate to post-petition actions. Therefore, such claims do not constitute property of her bankruptcy estate, and any recovery, should she prevail on these claims, would have no conceivable impact on the administration of her Chapter 7 bankruptcy estate. These claims, therefore, do not fall within the Bankruptcy Court's limited, 'related to' non-core jurisdiction.").[16]

Here, Plaintiff's FCRA and RESPA claims are not causes of action created under the Bankruptcy Code and, therefore, do not arise under Title 11. Moreover, Plaintiff's FCRA and RESPA claims are not "related to" matters under Title 11. Specifically, Plaintiff received a discharge on June 9, 2022. FAC, ¶ 95; Todd Decl., Ex. G. Plaintiff did not dispute the reporting of her Account with Equifax until October 3, 2022 – 4 months *after* receiving a discharge. FAC, ¶ 142.[17] Further, Plaintiff did not submit RFI 1 to CLS until February 8, 2023 and RFI 2 to CLS until June 1, 2023. *Id*. at ¶¶ 215 & 225. Thus, the factual allegations giving rise to Plaintiff's FCRA and RESPA claims all occurred *post*-petition and *post*-discharge. Plaintiff attempts to remedy this issue in the FAC by asserting that "the factual predicates of these claims are all centered in the Bankruptcy Code and the misconduct of Defendants in relation to the Bankruptcy

---

[16] *See also In re Smith*, 2012 WL 566246 (W.D. Tex. Feb. 21, 2012) (holding debtor's FDCPA and state law claims have no impact on the administration of debtor's bankruptcy estate because all of defendant's conduct which debtors complain of occurred after debtor received a chapter 13 discharge, and therefore the court lacks subject matter jurisdiction over these claims); *In re Garcia*, 2013 WL 414177 (W.D. Tex. Feb. 1, 2013); *Biege v. Sallie Mae Servicing, L.P. (In re Biege)*, 417 B.R. 697, 701 (Bankr. M.D. Pa. 2009) (finding that debtors' claims under the FDCPA based on post-Chapter 13–discharge activity did not fall within the bankruptcy court's 'related to' jurisdiction and dismissing debtor's FDCPA claim for lack of jurisdiction); *In re Steele*, 258 B.R. 319, 322 (Bankr. D.N.H. 2001) (holding that bankruptcy court lacked jurisdiction over FDCPA and state law claims arising out of post-Chapter 13–discharge collection activity).

[17] The letter Plaintiff purportedly sent to Equifax is not dated. FAC, Ex. G.

15

Code" (*id.* at ¶ 35), but she cannot escape the facts that her alleged dispute to Equifax, RFI 1 and RFI 2 were submitted *post*-discharge. As such, Plaintiff's FCRA and RESPA claims are ***not*** a part of, and have no impact on, the bankruptcy estate, and, therefore, the Court lacks "related to" jurisdiction over these claims.[18] Accordingly, this Court should dismiss Counts I and III.[19]

## II. PLAINTIFF'S FAC MUST BE DISMISSED IN ITS ENTIRETY UNDER RULE 12(B)(6) BECAUSE SHE FAILS TO STATE A CLAIM

In the alternative, if the Court determines the allegations of the FAC are sufficient for Article III standing, the FAC should still be dismissed under Rule 12(b)(6) because: (1) there is no private right of action under Section 524 of the Bankruptcy Code; (2) the reporting of Plaintiff's Loan was neither inaccurate nor misleading; and (3) no private right of action exists under Regulation X, and, regardless, Plaintiff failed to plead actual and statutory damages under RESPA.

### A. Standard for Dismissal Under Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. *See* Rule 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint

---

[18] In fact, Plaintiff re-opened her closed bankruptcy case to commence this adversary proceeding.
[19] Plaintiff's FAC asserts that to the extent the Court finds this to be a non-core proceeding, she consents to the entry of a final order by the Bankruptcy Court in accordance with 28 U.S.C. § 157(c)(2). However, Section 157(c)(2) requires the consent of ***all*** parties, and CLS does ***not*** consent.

that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

The Court may permissibly consider documents other than the Complaint in ruling on a motion under Rule 12(b)(6). *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Documents attached to the Complaint or incorporated by reference are considered part of the pleading for purposes of ruling on such a motion. *See id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). Moreover, when a plaintiff relies on documents in her Complaint, but chooses not to attach or expressly incorporate them, the Court may nonetheless consider the documents on a motion to dismiss if the documents are integral to the plaintiff's claim and the plaintiff had notice of them. *See In re Sprint Corp. Sec. Litig.*, 232 F. Supp.2d 1193, 1211 (D. Kan. 2002). Finally, in the case of a conflict between the allegations of the FAC and the content of an exhibit, the exhibit controls.[20] *See Broker's Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

**B.    Count II Must Be Dismissed Because Plaintiff Is Judicially Estopped from Asserting Such Claim, and There Is No Private Right of Action for a Violation of Sections 105 and 524 of the Bankruptcy Code**

Count II of Plaintiff's FAC seeks contempt and sanctions against CLS pursuant to Sections 105 and 524 of the Bankruptcy Code on the grounds that CLS misapplied and miscredited

---

[20] Specifically, while the allegations in the FAC are based on various documents, the FAC fails to include the documents filed in the Bankruptcy Case, which include, the Voluntary Petition, Plan, Confirmation Order, Discharge Order and CLS's Proof of Claim. Further, the FAC contends that the reporting on Plaintiff's account was inaccurate, which implicates the industry standard Metro-2 Guidelines (defined below). As such, the Court should consider the documents submitted by CLS herewith in determining this Motion.

17

payments received from Plaintiff under the terms of the confirmed Bankruptcy Plan. FAC, ¶¶ 157-90; 332-34.[21] The Court should dismiss Count II because Plaintiff is judicially estopped from asserting this claim, there is no private right of action under Sections 524 and 105, and, regardless, Plaintiff does not have a Section 524 claim as a matter of law.

1.   *Plaintiff Is Judicially Estopped from Asserting Her Claims Under the Bankruptcy Code*

When a debtor, such as Plaintiff, files for bankruptcy, she is under a duty to disclose all pending and potential claims. 11 U.S.C. § 521; *see also Slater v. United States Steel Corp.*, 871 F.3d 1174, 1176 (11th Cir. 2017) (In a Chapter 13 bankruptcy, a petitioner "must file sworn disclosures listing his debts and his assets, including any pending civil claims . . . ."). This duty to disclose is a continuing duty and debtors have "an express, affirmative duty to disclose all assets . . . ." *In re Coastal Plains, Inc.,* 179 F.3d 197, 207-08 (5th Cir. 1999). "Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (citing 11 U.S.C. § 541(a)(1); 5 COLLIER ON BANKRUPTCY § 541.08).

Where a petitioner fails to disclose known claims in a bankruptcy petition that the petitioner later asserts in a separate civil matter, the inconsistent civil lawsuit is barred by judicial estoppel. *See Slater*, *supra*, 871 F.3d at 1180. Generally, judicial estoppel will apply where (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage or impose an unfair detriment on the party seeking

___

[21] Although Plaintiff's FAC references Bankruptcy Rule 3002.1 (FAC, ¶¶ 176-98; 363-66), none of the specific Counts asserted in the FAC are for a purported violation of Bankruptcy Rule 3002.1. FAC, ¶¶ 324-40.

140406.01366/134111501v.3

estoppel.  *See Patriot Mfg. LLC v. Hartwig, Inc.*, 996 F.Supp.2d 1120 (D. Kan. 2014) (granting defendant's motion based on judicial estoppel) (internal citations omitted).

Here, judicial estoppel bars Count II of Plaintiff's FAC because Plaintiff failed to adequately disclose this claim in the Bankruptcy Case.  Specifically, Count II stems from CLS's purported failure to credit payments received under the Plan and its collection of fees under the Loan that were either not properly noticed or were in excess of amounts allowed under the Bankruptcy Rules.  FAC, ¶¶ 157-98. All of these allegations stem from actions that occurred during the pendency of the Bankruptcy Case. Yet, Plaintiff failed to adequately disclose her claims under Sections 524 and 105 of the Bankruptcy Code, or under Bankruptcy Rule 3002.1, at any time during the pendency of the Bankruptcy Case.  In fact, Plaintiff affirmatively represented that she did *not* have any claims against third parties.  Todd Decl., Ex. A at Schedule A/B, ¶ 30, 33 & 34. Nor did she amend her Petition to assert these claims after they arose, as required under Bankruptcy Rule 1009.  Fed. R. Bankr. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.").  Now, over a year after the Bankruptcy Case was closed, and after disclaiming any claims against CLS in her Schedules, Plaintiff inconsistently seeks to assert her claims under the Bankruptcy Code and Bankruptcy Rules that she failed to disclose in the Bankruptcy Case. Moreover, Plaintiff's failures to disclose her claims against CLS was done in an attempt to obtain an unfair advantage on the claim herself.  *See Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013).

Allowing Plaintiff to pursue Count II of her FAC "absent full and honest disclosure of [her] assets would violate the integrity of the bankruptcy system," which is consistent with the doctrine of judicial estoppel.  *See Ibok v. Siac-Sector Inc.*, 2011 WL 979307, at *3 (S.D.N.Y. Mar. 14, 2011).  Accordingly, the Court should dismiss Count II based on judicial estoppel.

140406.01366/134111501v.3

2. *There Is No Private Right of Action Under Sections 524 and 105 of the Bankruptcy Code*

In the event the Court finds Plaintiff is not judicially estopped from asserting Count II of the FAC, it must still be dismissed because neither Section 524, nor Section 105, of the Bankruptcy Code create a provide a private right of action for violating the bankruptcy discharge. *See Anaya v. Newrez LLC*, 2022 WL 4355284 (D. Kan. Sept. 20, 2022); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000); *Costello v. Wells Fargo Bank, N.A.*, 2023 WL 6380061, at *1 (2d Cir. Oct. 2, 2023) (we have "never identified a private right of action" under 11 U.S.C. § 524 for violation of a discharge order); *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328 (4th Cir. 2023); *Buenviaje v. Charnetsky*, 2023 WL 5216188 (C.D. Cal. June 29, 2023) (holding Section 105 does not create a private right of action to sue for damages to enforce Bankruptcy Code provisions).[22]

Indeed, the proper remedy for a violation of the discharge injunction is to bring a motion for contempt. *See Anaya*, *supra* 2022 WL 4355284, at *2 ("there is no private right of action for violation of the discharge injunction; the matter should be brought as a motion for contempt in the main bankruptcy case where 11 U.S.C. § 105 empowers bankruptcy courts to enter civil contempt orders against a creditor who violates the discharge injunction"); *Barrientos*, *supra*, 633 F.3d at 1191 (adversary complaint with cause of action for contempt of Section 524 had to be brought instead as a motion under Bankruptcy Rules 9020 and 9014. Because Plaintiff asserts her Section 524 claim as a cause of action in a separately commenced Adversary Proceeding and did not bring it as a motion in the underlying Bankruptcy Case, the Court must dismiss Count II of Plaintiff's Complaint. *In re Laudani*, 506 B.R. 19, 28 (Bankr. D. Mass. 2014) (dismissal of a count in an adversary complaint for a violation of a discharge injunction because the debtor's remedy is a

---

[22] *See also O'Flynn v. PHH Mortg. Corp.*, 2023 WL 6323118 (S.D. Ind. Sept. 28, 2023); *In re Culberson*, 2022 WL 2111268 (E.D. Tenn. June 10, 2022); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Circ. 2011).

motion for contempt filed in the main case).[23]

### 3. *Plaintiff Fails to State a Claim Under Section 524 As a Matter of Law*

Section 524(i) of the Bankruptcy Code provides:

> The willful failure of a creditor to credit *payments **received under a plan*** confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i) (emphasis added). Here, Plaintiff alleges throughout the FAC that the payments made by CLS were not included in the Plan. FAC, ¶¶ 62, 133-34, 137, 153, 155, 265. Because, as Plaintiff admits, the payments Plaintiff made directly to CLS were ***not*** received ***under*** the Plan, Plaintiff fails to state a claim under Section 524 of the Bankruptcy Code.

Moreover, Plaintiff's challenges to CLS's purported misapplication of funds toward the Loan lack merit, as Plaintiff signed the first modification in June 2020 and second modification in June 2021, and made payments under the same, thereby ratifying the documents, including the amount due under the Loan. *See, e.g., Vanier v. Ponsoldt*, 251 Kan. 88, 106 (1992) ("ratification is established by the purchaser accepting the benefits of the contract or 'by a failure to act promptly to repudiate the transaction.'").[24] Further, CLS filed several Notices of Postpetition Mortgage Fees, Expenses, and Charges and a Notice of Mortgage Payment Change. *See generally*, Docket.

---

[23] *See also Whitaker v. Bank of Am. (In re Whitaker)*, 2013 WL 2467932, at *6 (Bankr. E.D. Tenn. June 7, 2013) (dismissal of adversary complaint containing cause of action for violation of a discharge injunction); *Frambes v. Nuvell Nat'l Auto Fin., LLC (In re Frambes)*, 454 B.R. 437 (Bankr. E.D. Ky. 2011) (dismissal of adversary complaint, where cause of action for violation of discharge injunction was limited to contempt motion).

[24] *Prather v. Colorado Oil & Gas Corp.*, 218 Kan. 111, 117 (1975) ("Ratification has been defined as the acceptance of the result of an act *with an intent to ratify*, and with full knowledge of all the material circumstances"); *Allison v. Borer*, 131 Kan. 699, 703 (1930) ("[T]he acceptance and retention of the proceeds of a loan or the benefits thereof . . . amount to an implied ratification of the loan . . . .").

Neither the Chapter 13 Trustee nor Plaintiff challenged these Notices. *Id.* Accordingly, Plaintiff cannot now challenge the payments.

### C. Plaintiff's FCRA Claim Fails as a Matter of Law

Plaintiff's FAC alleges that CLS violated the FCRA by purportedly reporting the Loan as "INCLUDED_IN_CHAPTER_13", the Comments section reporting 'Bankruptcy chapter 13' and 'Bankruptcy petition', and the Date of First Delinquency and Delinquency First Reported field both stated 'Aug 01, 2018.'" FAC, ¶ 133. As a result, Plaintiff alleges CLS's reporting was incorrect, inaccurate and/or materially misleading because it "made it appear as though the Mortgage was discharged through Plaintiff's Bankruptcy Case" and "as though the Mortgage was delinquent at the time the Bankruptcy Case was filed." *Id.* at ¶¶ 134-35; 154; 93-94; 325-30. Even taking the factual allegations as true, the Court should dismiss Plaintiff's FCRA claim for failure to state a claim because CLS's reporting on Plaintiff's Loan was accurate and was not materially misleading as a matter of law.

The FCRA requires credit furnishers, like CLS, to

> provide accurate information to consumer reporting agencies, and, upon receiving notice of a dispute from a CRA, to (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750–51 (10th Cir. 2009).

Accuracy is a threshold element for a claim against a furnisher under Section 1681s-2, and the reasonableness of an investigation is assumed where the reporting is accurate. *See Mercedes v. Wells Fargo Home Mortg. Inc.*, 2015 WL 457299, at *4 (D.N.J. Feb. 3, 2015) (investigation was reasonable where reporting was accurate); *Chiang v. Verizon new Eng., Inc.*, 595 F.3d 26, 30

22

(1st Cir. 2010) ("[A] § 1681s-2(b) claim requires plaintiff to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover). "[T]he standard of accuracy embodied in [the FCRA] is an objective measure." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991); *see also Gomez v. EOS CCA*, 2020 WL 3271749, at *3 (D. Ariz. June 17, 2020) (quotation omitted) ("A consumer's personal opinion or speculation is 'insufficient to support a claim of inaccuracy under the FCRA'"). "The burden rests with the plaintiff to show the defendant furnisher provided information that was inaccurate or false or that was materially misleading." *Adkins v. SLM Corp.*, 2022 WL 1302805, at *3 (D. Kan. May 2, 2022) (citing *Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014), *cert. denied*, 574 U.S. 908 (2014)).

Here, CLS accurately reported Plaintiff's Loan because CLS followed the industry standard, namely the Consumer Data Industry Association's ("CDIA") Metro 2 Format ("Metro-2 Guidelines"), for how an account should be reported when the consumer files for bankruptcy, but the account is not discharged in the bankruptcy. Specifically, the CDIA's Metro-2 Guidelines provide that when a borrower, such as Plaintiff, files for Chapter 13 Bankruptcy, but the account is not discharged, the furnisher should report the account consistent with the same guidelines for "Accounts included in Bankruptcy Chapter 12 or 13." Todd Decl., Ex. J (Metro-2 Guidelines, FAQs 23 and 28). Thus, the furnisher is to report the filing of the Chapter 13 petition with a "D." *Id.* (Metro-2 Guidelines, Exhibit 11, FAQs 23 and 28). For all months between the date the Petition is filed and the resolution of the bankruptcy proceeding, the furnisher is to continue to report a "D" or "Blank (previous value reported is retained)." *Id.* at FAQ 28. Since Plaintiff listed the Loan in her Petition, and CLS filed a Proof of Claim for the Loan (Todd Decl., Exs. A & D), CLS accurately reported Plaintiff's Loan for the period Plaintiff was in bankruptcy consistent with the

23

Metro-2 Guidelines.[25]  Further, the Date of Account Information correctly reflects August 21, 2018, which is the date Plaintiff filed for Chapter 13 bankruptcy.  Todd Decl., Exs. A & K.  Accordingly, CLS accurately reported Plaintiff's Loan to the CRAs, including Equifax.[26]  How the reported information appears on Plaintiff's credit report is out of CLS's control.

In addition, the reporting was not materially misleading.  Information is only materially misleading when it is "open to an interpretation that is directly contradictory to the true information." *Gross v. Private National Mortgage Acceptance Co., LLC*, 512 F. Supp.3d 423, 427 (E.D. NY 2021).  In making this assessment, the Court must view the credit report as a whole.  *See, e.g., Settles v. Trans Union LLC*, No. 3:20-cv-00084, 2020 WL 6900302, *4 (M.D. Tenn. Nov. 24, 2020); *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022); *Samoura v. Trans Union LLC*, NO. 20-5178, 2021 WL 915723, *5 (E.D. Pa. Mar. 10, 2021); *Schweitzer v. Equifax Information Solutions LLC*, 441 Fed. App'x 896, 902 (3d Cir. 2011); *Hernandez v. Trans Union LLC*, No. 3:19cv1987, 2020 WL 8368221, *3 (N.D. Fla. Dec. 10, 2020).

Here, the Payment History on the credit report shows no data available for the years CLS

---

[25] Plaintiff argues that reporting the account as "included in bankruptcy" is no different from reporting an account as "discharged in bankruptcy."  FAC, ¶ 264.  However, regardless of whether there is a distinction between reporting the account as "included in bankruptcy" versus "discharged in bankruptcy," this alleged notational error is insufficient to establish an inaccuracy in a plaintiff's credit report as a matter of law.  *See Sherfield v. Trans Union, LLC*, 2019 WL 3241176, at * 3 (W.D. Okla. July 18, 2019 (holding the report stating plaintiff's accounts as included in bankruptcy instead of discharged in bankruptcy was neither inaccurate nor misleading).  In fact, courts have regularly dismissed FCRA claims, such as Plaintiff's claim, based on reports that the loan was "included" in the bankruptcy even when the loan payments were made by the borrower during the bankruptcy proceedings.  *See Schueller,*559 Fed. App'x at 737 (affirming dismissal of FCRA claim where defendants credit reported that "home mortgage loan had been discharged in bankruptcy" and did not credit report that plaintiff had in fact "continued to make the monthly payments on the loan"); *Danielson v. Experian Info. Solutions Inc.*, 2004 WL 1729871, at *1, 6 (D. Minn. July 30, 2004) (dismissing FCRA claim that the plaintiff's loan was inaccurately credit reported as "included in bankruptcy" when plaintiff was in fact "current" under the loan). After all, the accuracy of the credit report must be measured *at the time it is submitted* and not by subsequent events. *See id.*  Here, at the time of CLS's credit reporting, the Loan was still subject to the Bankruptcy Case and its protections.  Thus, taking Plaintiff's allegations as true, reporting the account as "included in bankruptcy" was accurate as a matter of law.

[26] Plaintiff allegations "upon information and belief," particularly with respect to her allegation that CLS failed to implement a "Q" code after Plaintiff's completion of the Bankruptcy Case (FAC, ¶ 114) need not be taken as true. *See Smith v. City of Sumiton*, 578 Fed. App'x 933, 936 (11th Cir. 2014).

24

serviced the Loan.  FAC., Ex. H. Further, the credit report shows a balance of $0, the date the Loan was reported (6 months before Plaintiff sent the dispute letter to Equifax), the Loan was transferred, the date the Loan was entered into, and the date of last payment.  *Id*.  Nothing in the credit report, read in its entirety, is misleading to creditors.  Notably, aside from Plaintiff's conclusory allegations that the reporting was inaccurate and/or misleading, the FAC still fails to allege how it was misleading or how it was misleading to creditors, which is insufficient to state a FCRA claim.  *See generally*, FAC; *see also Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001) ("Courts have repeatedly held that a personal opinion is 'mere speculation that the notation was misleading and is therefore insufficient to support a claim of inaccuracy under the FCRA."); *Elsady v. Rapid Global Bus. Sols., Inc.*, 2010 WL 2740154, at *7 (E.D. Mich. July 12, 2010) ("[A] plaintiff's mere assertion that a report was misleading, or even his proof that a lay person would be mislead, is insufficient to establish that a report was misleading and, therefore, inaccurate.").  Accordingly, Plaintiff's FCRA claim fails as a matter of law and must be dismissed.

### D.   Plaintiff's Third Count Alleging Violations of Regulation X and RESPA Fail as a Matter of Law

Plaintiff's Third Count alleges CLS violated Sections 1024.35 and 1024.36 of Regulation X and Sections 2605(e)(2) and 2605(k) of RESPA.  Specifically, Plaintiff alleges on or about February 8, 2023, she submitted RFI 1, which requested specific documents and information related to the Loan and alerted CLS to the errors complained of in the FAC and requested that CLS take action to correct those errors, and CLS failed to, among other things, acknowledge receipt of RFI 1, send a response to RFI 1 and did not provide the requested information or documentation pertaining to the specific information sought in RFI 1. (FAC, ¶ 215-24).  Plaintiff further alleges that on or about June 1, 2023, Plaintiff submitted RFI 2, which requested specific documents and information related to the Loan and alerted CLS to the errors complained of in the FAC and

requested that CLS take action to correct those errors, and CLS failed to, among other things, acknowledge receipt of RFI 2, send a response to RFI 2 and did not provide the requested information or documentation pertaining to the specific information sought in RFI 2. *Id*. at ¶¶ 225-34. As a result, Plaintiff alleges CLS's failure to timely and properly respond to each of the RFIs and Notices of Error contained within each RFI constitutes clear violations of Regulation X and RESPA. *Id*. at ¶¶ 235-36. Plaintiff seeks statutory damages and alleges actual damages for the costs related to sending the RFIs and her belief that "CLS was not accountable to, and could not be held accountable to, its legal obligations." *Id*. at ¶¶ 317; 339-40. The Court should dismiss Plaintiff's Regulation X and RESPA claims because they fail as a matter of law.

      1.    <u>Plaintiff's Regulation X Claim Fails as a Matter of Law Because She Does Not Have a Private Right of Action Thereunder</u>

Section 1024.35 of Regulation X outlines the error resolution procedures for when a borrower notifies the loan servicer about certain errors involving a mortgage loan. 12 C.F.R. § 1024.35. Section 1024.36 of Regulation X outlines the resolution procedures for when a borrower sends a request for information. *Id*. at § 1024.36(c).

Notably, under Regulation X, a borrower only has a private cause of action for a violation under C.F.R. § 1024.41, which specifically provides that "[a] borrower may enforce the provisions of this section . . . ." 12 C.F.R. § 1024.41(a). The other sections of Regulation X, including Sections 1024.35 and 1024.36, do ***not*** provide for a private cause of action. *See Muathe v. Wells Fargo Bank, N.A.*, 2019 WL 635407, at *4-5 (D. Kan. Feb. 14, 2019) (holding no private right of action to enforce Section 1024.40 under Regulation X); *Best v. Newrez LLC*, 2020 WL 5513433, at * 28 (D. Md. Sept. 11, 2020) (holding there is no private right of action under Section 1024.36 of Regulation X based upon the language in Section 2605(f) of RESPA); *Vallier v. Nationstar Mortg., LLC*, 2018 WL 1319166, at *5 (S.D. Tex. Feb. 1, 2018) ("[T]here is no private cause of

26

action for any violation of 12 C.F.R. §§ 1024.35 or 1024.39."), *report and recommendation adopted*, 2018 WL 1322247 (S.D. Tex. Mar. 13, 2018); *Medina v. Parkside Lending LLC*, 2020 WL 4274587 (W.D. Tex. July 23, 2020) (same); *Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) (explaining 12 C.F.R. § 1024.35 does not create a private right of action); *Kilgore v. Ocwen Loan Serving, LLC* 89 F. Supp.3d 526, 538 n.4 (E.D.N.Y. 2015) (same); *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1378-79 (S.D. Fla. 2015) (deeming that RESPA creates a private right of action for only three types of conduct listed in 12 U.S.C. §§ 2605(f); 2607(a); 2608(b)); *Watts v. Mortg. Bridge Solutions, LLC*, 2016 WL 8188768, at *6 (E.D. Mich. Dec. 7, 2016) ("Under Regulation X, a borrower is only permitted a private cause of action for a violation under § 1024.41, which specifically provides that '[a] borrower may enforce the provisions of this section . . . .'"), adopted by, 2017 U.S. Dist. LEXIS 13526, 2017 WL 438745 (E.D. Mich. Feb. 1, 2017); *Willson v. Bank of Am., N.A.*, 2016 WL 8793204, at *8 (S.D. Fla. May 2, 2016) (holding no private right of action under Section 1024.35); *Roes v. Specialized Loan Servicing, LLC*, 2018 WL 3636543, at *3 (E.D. Tenn. July 31, 2018) (same); *Nelson v. JPMorgan Chase Bank, N.A.*, 707 F. Supp. 2d 309 (E.D.N.Y. 2009) (holding that RESPA itself provides no private right of action for technical violations of its disclosure mandates); *Chow v. Aegis Mort. Corp.,* 286 F. Supp. 2d 956, 962 (N.D. Ill. 2003) (surveying RESPA disclosure cases and legislative history and holding that technical violations of RESPA disclosure requirements do not give rise to a private right of action); *Iannuzzi v. Washington Mutual Bank*, 2008 WL 3978189, n. 3 (E.D.N.Y. 2008) (same).[27]  Since Plaintiff alleges violations of Sections 1024.35 and 1024.36 of Regulation X, the Third Count fails on this basis alone and must be dismissed with prejudice.

---

[27] *See also Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016) ("Section 1024.39 does not explicitly convey a private right of action to borrowers"); *Jacobs v. Alabama Hous. Finance Auth.*, 2021 WL 807880 (W.D. Wa. Mar. 3, 2021) (citing *Brown*, dismissing plaintiff's claim against defendants under Section 1024.40); *Covino v. Wells Fargo Bank*, 2018 WL 4616071 (D.N.J. Sept. 26, 2018) (dismissing plaintiff's Section 1024.38 claims

2.  Plaintiff's RESPA Claim Fails as a Matter of Law Because She Fails to Plead Actual or Statutory Damages

To state a claim under Section 2605(e) of RESPA, Plaintiff must plead the following: (1) the correspondence met the requirements of a QWR, (2) the mortgage servicer failed to make a timely response that was appropriate under the statute, and (3) the servicer's failure caused actual damages. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014) (citing § 2605(e), (f)). "RESPA provides only for actual damages stemming from a violation of 'any provision' of § 2605 and statutory damages arising from a pattern or practice of violations." *Morgan v. Carrington Mortg. Servs.*, 719 Fed. App'x 735, 744 (10th Cir. 2017) (citing 12 U.S.C. § 2605(f)(1)(A) & (B). "Thus, to survive a motion to dismiss under Rule 12(b)(6), a RESPA plaintiff must allege actual damages arising from a RESPA violation," or a pattern or practice of violations. *Id.*; *see also Ricotta v. Ocwen Loan Servicing Ctr.*, 2008 WL 516674, at *5 (D. Colo. Feb. 22, 2008) (finding that "a RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation"); *Caddel v. CitiMortgage, Inc.*, 2006 WL 625970, at *6 n.9 (D. Kan. Feb. 14, 2006) (holding RESPA claim lacked substantive merit because plaintiff did not allege or show "actual damages which is a required element under RESPA Section 2605").

To plead a pattern or practice of noncompliance, plaintiff must plead more than just her own experience with defendant's alleged violation; she must plead "facts regarding noncompliance outside the context of [her] own correspondence." *Dyer v. Cap. One, N.A.*, 496 F. Supp.3d 554, 562 (D. Mass. 2020); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013). To

---

on the grounds there is no private right of action to enforce it); *Joussett v. Bank of Am., N.A.*, 2016 WL 5848845 (E.D. Pa. Oct. 6, 2016) (same); *Schmidt v. PennyMac Loan Services*, 2015 WL 2405571 (E.D. Mich. May 20, 2015) (holding a private cause of action under Section 1024.40 was not available to a borrower); *Brown v. Bank of N.Y. Mellon*, 2016 WL 2726645, at *3 (E.D. Va. May 9, 2016) ("Defendants correctly argue that 12 C.F.R. . . . §§ 1024.39 . . . do[es] not explicitly provide a cause of action to private individuals").

28

recover statutory damages based upon a pattern or practice, the plaintiff must first recover actual damages. *See Fowler v. v. Bank of Am.*, 747 F. App'x 666, 673 (10th Cir. 2018) ("As the Eleventh Circuit noted, the use of 'additional' seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages.") (citation omitted); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 n. 4 (11th Cir. 2016) (same); *Lewis v. PNC Bank, N.A.*, 2018 WL 6249989 at * 8 (S.D. Ohio Nov. 29, 2018) (citation omitted); *H. Anthony James v. Ocwen Loan Servicing, LLC*, 2017 WL 6336760, at * 9 (S.D. Ohio Dec. 12, 2017) ("Certainly one violation of RESPA and Regulation X cannot constitute a pattern or practice of noncompliance.").

Here, Plaintiff's RESPA claim fails as a matter of law because the FAC still fails to sufficiently plead both actual and statutory damages based on a pattern or practice of noncompliance. First, Plaintiff fails to plead actual damages. While Plaintiff alleges she incurred costs related to sending the RFIs (FAC, ¶ 316), the law is clear that these costs are ***not*** considered actual damages for purposes of a RESPA claim. *See Fowler*, *supra*, 747 F. App'x at 670 ("[L]itigation expenses and attorney's fees can't be actual damages because RESPA separately allows successful plaintiffs to recover such fees and expenses in addition to actual damages.") (internal citations, quotation and emphasis omitted); *Baez v. Specialized Loan Servicing*, 709 F. App'x 979, 983 (11th Cir. 2017) ("cost of sending an initial request for information is not a cost to the borrower 'as a result of the failure' to comply with a RESPA obligation") (internal citation omitted).[28] Moreover, Plaintiff's claim that CLS's failure to respond to the RFIs "caused her to believe that CLS was not accountable to, and could not be held accountable to, its legal obligations" (Compl., ¶ 207) are "legal labels, not factual allegations." *Starski v. Caliber Home*

---

[28] *See also Zaychick v. Bank of Am., N.A.*, 2015 WL 4538813 (S.D. Fla. July 27, 2015) ("the costs incurred while preparing a [QWR] for information from a servicer ***cannot serve as a basis for damages*** because, at the time those expenses are incurred, there has been no RESPA violation.") (emphasis added); *Korinko v. Wells Fargo Home Mortg.*, 2020 WL 7022456, at *8 (D. Mass. Nov. 30, 2020).

140406.01366/134111501v.3

*Loans Inc.*, 2020 WL 13499981, at *5 (D. Colo. Mar. 20, 2020) (rejecting plaintiff's allegations that defendant's actions caused plaintiff mental anguish, anxiety and emotional distress).[29] Thus, Plaintiff fails to allege actual damages as a matter of law.

Second, Plaintiff's FAC still fails to sufficiently plead that she is entitled to statutory damages. Plaintiff alleges that CLS's purported failure to respond to RFI 1 and RFI 2 "are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights . . . ." (FAC, ¶ 237). However, Plaintiff cites to no actual enforcement proceedings or judgments suggesting a regular practice sufficient to sustain a claim for statutory damages. Instead, the FAC refers to 1,300 complaints filed with the CFPB against CLS with approximately 13 such complaints purportedly alleging CLS failed to respond to written requests for information or notices of error (FAC, ¶¶ 238–42) and two (2) federal court actions against CLS (*Id*. at ¶¶ 244 & 246).[30] Plaintiff's reliance on the CFPB complaints, which contained unverified consumer allegations, is based upon the erroneous assumption that the mere filing of such complaints automatically gives rise to a RESPA claim. It does not. *See, e.g., Rodriguez v. Seterus, Inc.*, 2015 WL 5677182, at *3 (S.D. Fla. Sept. 28, 2015) ("Plaintiff's statement referring to other communications with Defendant by nonparties . . . is too conclusory and vague to state a claim based on a pattern or practice of RESPA noncompliance."); *Ogden v. PNC Bank*, 2014 WL 4065617 (D. Co. Aug. 15, 2014) (holding plaintiff's allegations regarding another consumer are conclusory and insufficient for a pattern or practice statutory damages claim to survive PNC's motion to dismiss). Moreover, Plaintiff's two examples in the FAC of purportedly similar behavior in different states fails to support statutory

---

[29] *See also Morgan*, *supra,* 719 F. App'x at 744 (affirming dismissal, stating "[Plaintiff] made only the conclusory allegation that she suffered 'damages for economic harm, pain and suffering, severe stress and emotional distress.' These are legal labels, not factual allegations."); *Ogden v. PNC Bank*, 599 F. App'x 331, 332 (10th Cir. 2015).
[30] Despite Plaintiff's contention, an Offer of Judgment does not represent "acknowledgment and acceptance" of liability. FAC, ¶ 245.

30

damages, particularly where no judgment or order was entered such that a pattern or practice could be established.  *See Perron v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852 (7th Cir. 2017); *Ogden*, *supra*, 2014 WL 4065617, at \*10 (holding two RESPA violations are insufficient to support a pattern or practice of noncompliance under § 2605(f)).[31]

Finally, since Plaintiff failed to sufficiently plead actual damages, she cannot show she is entitled to statutory damages.[32]  Thus, Plaintiff's RESPA claim must be dismissed with prejudice.

## III.  PLAINTIFF'S PURPORTED "MOTION" FOR CONTEMPT AND SANCTIONS MUST BE DENIED IN ITS ENTIRETY

Plaintiff's FAC includes a "motion" for contempt and sanctions against CLS pursuant to Sections 105 and 524 of the Bankruptcy Code ("Sanctions Motion").  FAC, ¶¶ 341-73.

Initially, Plaintiff's "motion" must be denied because it is improper to seek such relief in a pleading.  *See* Fed. R. Civ. P. Rule 7(a) (pleadings) and (b)(1) ("a request for a court order must be made by motion"); *Bigelow v. RKO Radio Pictures*, 16 F.R.D. 16 (N.D. Ill. 1954) (a motion is not a pleading).  Moreover, Plaintiff's motion is premature.  The Court has not issued a decision on CLS's Motion, which, if granted, would dismiss the FAC against CLS, thereby rendering Plaintiff's Sanctions Motion moot.  Moreover, even if CLS's Motion is denied, the parties have not engaged in discovery and the Court has not concluded that CLS violated any applicable statutes such that the Court should find CLS in contempt and issue sanctions under Section 524.  As such, the Court should deny Plaintiff's Sanctions Motion in its entirety.[33]

---

[31] *See also Brown v. CitiMortgage, Inc.*, No. 16-CV-11484-LTS, 2017 WL 1363305, at \*4 (D. Mass. Apr. 11, 2017), *aff'd*, No. 18-1627, 2019 WL 11005483 (1st Cir. June 25, 2019); *Selman v. CitiMortgage, Inc.,*2013 WL 838193, at \*10 (S.D. Ala. Mar. 5, 2013) ("[P]laintiff's suggestion that the Second Amended Complaint adequately alleges a pattern and practice by referring to two instances in which CitiMortgage failed timely to respond to QWRs is legally infirm."); *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (two RESPA violations was insufficient to support a pattern or practice); *Gorbaty v. Wells Fargo Bank, N.A.,* 2012WL 1372260, at \*5 (E.D.N.Y. 2012) (finding a "pattern or practice" means a standard or routine way of doing things, and alleging four examples of RESPA violations does not qualify as a standard or routine way of doing things).

[32] *See Fowler*, *supra*, 747 Fed. App'x at 673; *Renfroe v. Nationstar Mortg., LLC*, *supra*, 822 F.3d at 1247 n.4.

[33] In the alternative, the Court should hold the Sanctions Motion in abeyance pending a determination of this action.

31

## CONCLUSION

For all the foregoing reasons, CLS respectfully requests that the Court enter an Order dismissing Plaintiff's FAC with prejudice, denying Plaintiff's Sanctions Motion, and for such other and further relief as is just and appropriate.

Dated: Overland Park, KS
       January 11, 2024

<div style="margin-left: 40%">

Respectfully Submitted by:
Millsap & Singer, LLC

/s/ James Eric Todd
Cynthia M. Kern Woolverton, #21445
Adam G. Breeze, #79043
James Eric Todd, #24297
612 Spirit Drive
St. Louis, MO 63005
Telephone: (636) 537-0110
Facsimile: (636) 537-0067
bkty@msfirm.com

and

Blank Rome LLP
Andrea M. Roberts (admitted *pro hac* vice)
andrea.roberts@blankrome.com
Diana M. Eng (admitted *pro hac* vice)
diana.eng@blankrome.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000

*Attorneys for Defendant Community Loan Servicing, LLC*

</div>

32

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing document was filed electronically on January 11, 2024, with the United States Bankruptcy Court, and has been served on the parties in interest via e-mail by the Court pursuant to CM/ECF as set out on the Notice of Electronic filing as issued by the Court or in the alternative has been served by depositing a true and correct copy of same enclosed in a postage prepaid, properly addressed envelope, in a post office official depository under the exclusive care and custody of the United States Postal Service within the state of Missouri on those parties directed by the Court on the Notice of Electronic Filing issued by the Court as required by the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court.

*/s/ James Eric Todd*

**Electronic Mail Notice List**

The following is the list of attorneys who are currently on the list to receive e-mail notices for this case.

James Crump

Anthony Chester

Ryan M. Callahan

Phillip Zeeck

MacGregor Greenlee

140406.01366/134111501v.3